THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| COLLETTE RUSSELL, | ) | |
| | ) | MEMORANDUM DECISION |
| Plaintiff, | ) | AND ORDER |
| | ) | |
| vs. | ) | |
| | ) | |
| NEBO SCHOOL D DISTRICT, ET AL., | ) | |
| | ) | |
| Defendants. | | Case No. 2:16-CV-00273- DS |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

Before the Court is the Motion for Summary Judgment of Defendant Nebo School District ("Nebo") and Defendant Angie Killian. (ECF No. 104). Plaintiff Collette Russell is a former Nebo employee who worked as a Resource Technician at Mount Loafer Elementary School in Salem, Utah. She alleges that Defendant Bruce Moon, who worked as a custodian at the same school, subjected her to various acts of sexual harassment. Ms. Russell generally alleges that while employed by Nebo she was subjected to sexual harassment and discrimination, and ultimately retaliated against because of her complaints of harassment and discrimination in violation of federal law.[1]

---

[1] Ms. Russell's Amended Complaint (ECF No. 5) lists five federal law claims for relief against either Nebo and/or Ms. Killian: (1) Title VII Sexual Harassment against Nebo; (2) Title VII Sexual Discrimination against Nebo: (3) Title VII Retaliation against Nebo; (4) Section 1983 Equal Protection/Free Speech violations against Nebo and Killian; and, (5) Title IX violation against Nebo. The Amended Complaint also lists two state law claims against Mr. Moon: (6) assault and battery; and, (7) intentional infliction of emotional distress.

Nebo and Killian move for summary judgement on all claims alleged against them.[2] They contend that based on the undisputed material facts Russell cannot demonstrate:

1. Moon's advances were unwelcome and unwanted;

2. Nebo's negligence;

3. An adverse employment action as required for her claims of Title VII discrimination, Title IX discrimination, Title VII Equal Protection/First Amendment violations, and Title IX retaliation;

4. A clearly established Equal Protection retaliation claim;

5. An Equal Protection violation; or

6. A First Amendment violation.

## II. SUMMARY JUDGEMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. When applying this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F. 3d 1279, 1283 (10th Cir. 2010). The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[3] *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

---

[2] In considering Defendants' Motion, the Court has reviewed Defendants' Evidentiary Objections (ECF No. 158) and Plaintiff's Response and Objections (ECF No. 164). The Court has given consideration to the relevant and material evidence of record that it deems appropriate under the applicable rules of procedure and evidence, and will not address individually the numerous objections noted by the parties.

[3] Whether a fact is material is determined by looking to relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242.

This burden has two distinct components: an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party. *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (2d ed. 1983).

The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. 242.

### III.  DISCUSSION

**A. Consent**

Asserting that consent is at the heart of this case, Defendants first urge, contrary to Ms. Russell's allegations, that the "overwhelming evidence demonstrates she welcomed and consented to Moon's actions." ECF No 104 at 23. In support they point to such things as emails and text messages between the two, gifts that Russell gave Moon, kissing and other intimate conduct, and Russell going to Moon's house on one occasion. *See* ECF No. 104 at 23-25. Ms. Russell counters that significant evidence exists to show that Moon's conduct towards her was unwelcome.

Disputed issues of material fact preclude summary judgment on the issue of Russell's consent. Ms. Russell cites factual allegations in the record from which a jury

could conclude that some or all of Moon's alleged conduct was unwelcome.[4] *See* ECF No. 149 at 55-57 (citing factual allegations such as the following: Russell was threatened by Moon; she told Moon daily to leave her alone; she reported Moon's conduct to school officials; she refused his sexual advances and invitations; she did not reciprocate when he hugged and kissed her; and she jerked away when Moon forcefully tried to place her hand on him). Other objective evidence also could be viewed by a jury as supporting the same or similar conclusion. *See id.* at 57 (citing, for example, the following factual allegations: Russell complained twice to school personnel about Moon's conduct; Pruitt, the school secretary, acknowledged she knew Russell was bothered by Moon's conduct when Russell complained to Pruitt in October of 2013; Moon harassed both Killian, the the school principal, and Pruitt; Russell never personally interacted with Moon outside of school until December 23, 2013; and Moon changed his story regarding the alleged consensual acts).

### B. Title VII Sexual Harassment - Employer Negligence (First Claim)

Russell's First Claim in the Amended Complaint is against Nebo for Title VII sexual harassment based on Nebo's alleged negligence.[5] To prove sexual harassment based on a theory of employer negligence liability a plaintiff "must establish that (1) the

---

[4] *See Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 68 (1986) ("[T]he fact that sex-related conduct was 'voluntary,' in the sense that the complainant was not forced to participate against her will, is not a defense to a sexual harassment suit brought under Title VII. The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome'. 29 C.F.R. § 1604.11(a) (1985).").

[5] "Under the negligence theory, an employer is liable only 'if it knew or should have known' about the sexually harassing conduct of a non-supervisory employee and failed to stop it." *Dunlap v.Spec. Pro., Inc.*, 939 F. Supp. 2d 1075, 1085 (D. Colo. 2013) (quoting *Burlington Industries, Inc., v. Ellerth*, 524 U.S. 742, 759 (1998).

employer had actual knowledge or constructive knowledge of the harassment and (2) the employer's remedial and preventative responses to the harassment were inadequate." *Dunlap v.Spec. Pro., Inc.*, 939 F. Supp. 2d 1075, 1085 (D. Colo. 2013) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998); *see also Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1244 (10th Cir. 2001) (citation omitted), *cert. denied*, 535 U.S. 970 (2002) ("[t]o protect against imposing strict liability upon employers, [courts] apply a negligence analysis asking whether the organization 'fail[ed] to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known'"). Nebo asserts that because it neither had actual or constructive knowledge of Moon's harassment, and because its remedial actions were prompt and effective, it is entitled to judgment on Russell's First Claim.

### 1. knowledge

Ms. Russell alleges that when she reported Moon's conduct, Angie Killian, the school principal, was not in the office so she reported Moon's harassment to Lisa Pruitt, the school secretary. Nebo contends that the only person to whom Russell allegedly reported Moon's harassment before December 26, 2013, was Pruitt, and, therefore, the report was inadequate because Pruitt was not a management level employee.[6] It also contends the report itself was inadequate.

---

[6]"In assessing whether an employer was negligent in dealing with known harassment, '[a]ctual knowledge will be demonstrable in most cases where the plaintiff has reported harassment to management level employees.'" *Kramer v. Wasatch County Sheriff's Office,* 743 F. 3d 726, 755 (10th Cir. 2014) (citation omitted).

5

A management-level employee "for the purposes of imputing knowledge of co-worker harassment to the employer, need only be someone who has at least some authority over the plaintiff, or at least some control over the working environment." *Kramer v. Wasatch County Sheriff's Office*, 743 E. 3d 755, n. 19 (citing *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1074 (10th Cir. 1998)). Nebo's policy also allows an employee to submit a claim to someone with supervisory responsibility. ECF No. 105, pp. 124, 127, 128.

Russell identifies factual allegations from which a jury could conclude that Pruitt had supervisory responsibility and/or some control over the working environment for purposes of receiving a sexual harassment complaint. The following are examples: discipline issues and workplace complaints were reported to Pruitt; time cards were submitted to Pruitt; employees leaving the building would check in and out with Pruitt; Pruitt is over or assists with finances, budgets, purchase orders, and inventory; and, she dispenses controlled medicine to students. *See* ECF No. 149, ¶¶ 73 & 78, pp. 32-33, 34-35. And according to Killian, Pruitt is the "face of Mt. Loafer". ECF No. 105-4, p. 47. "She [Pruitt] helps enroll students, register students, she helps with scheduling, she helped with placing student teachers, or students in teachers' classes, she answered questions of parents when they called." *Id.* It is undisputed that Nebo did not have a policy identifying a chain of command at Mt. Loafer Elementary, and it did not have a policy identifying Russell's supervisor. ECF No. 149, ¶ 78, p. 34.

In any event, Russell also alleges facts from which a jury could find that Pruitt told Killian of Russell's complaint. *See* ECF No. 149, ¶ 67, pp. 30-31.. Moreover, there is evidence from which a jury could find that Killian had actual notice of Russell's

6

complaint based on information other than that reported by Russell. Factual allegations in the record reflect that Pruitt complained to Killian about Moon's pinching, back rubs, hugs and language as early as August 2013, prior to Russell's complaint. ECF No. 105-4, pp. 114-116. Evidence also reflects that Killian personally experienced conduct that could be construed as harassment and, thus, was aware of such conduct. See ECF No. 149, ¶ 61, pp. 27-28; ECF. No. 105-4, p. 109.

Nebo's position, that Russell's conversation with Pruitt was not a proper report because it was too vague and because Russell did not approach Pruitt with the intention of reporting sexual harassment, is rejected for purposes of the present motion. Russell's intent upon approaching Pruitt is immaterial so long as she conveyed that she was being harassed.[7] There are factual allegations that Russell told Pruitt what was happening, who was doing it, and that she wanted it to stop. ECF No. 149, ¶¶ 74-77, pp. 33-34. There is also evidence that Pruitt understood from her conversation with Russell that Russell was bothered by Moon's conduct. ECF No. 105-7 at 60.

### 2. remedial action

Whether Nebo took effective remedial action, likewise, is a question for the jury in this case. *See Turnbull*, 255 F.3d at 1244-45 (court found that whether an employer

---

[7] *See Hirase-Doi v. U.S. West Communications, Inc.,* 61 F.3d 777, 785 (10th Cir. 1995*), abrogated on other grounds by Burlington Indus. v. Ellerth,* 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)) (dismissing argument that a report of harassment was merely a "casual conversation between friends" and the employee had "no intent to make a formal sexual harassment complaint" as "no more than a disputed issue of fact – a proper question for the finder of fact."); *see also Gentry v. Export Packaging Co.*, 238 F.3d 842, 849 (7th Cir. 2001) ("there is no legal mandate that an employee use the term 'sexual harassment' in order to inform his or her employer about a harasser in the workplace").

7

acted reasonably was an issue of fact for the jury to decide where there was evidence showing an employer should have and could have taken additional measures to ensure the safety of its staff). Although Nebo outlines various actions it allegedly took in response to Moon's conduct, *see* ECF No. 104, pp. 29-32, Russell alleges facts from which a finder of fact could conclude that Nebo's responses failed in being either remedial or preventative. *See* ECF No. 149, ¶¶ 47-63 at pp. 20-29, & pp. 64-67 (discussing numerous factual allegations regarding Moon's alleged history of harassing conduct).

In sum, because there are issues of disputed fact as to whether Nebo had actual or constructive notice of Moon's harassment, and whether Nebo's remedial actions were prompt and effective, Nebo's motion for summary judgment as to Russell's First Claim against Nebo for Title VII sexual harassment is denied.

### C. Title VII Sex Discrimination - Adverse Action (Second Claim)

Russell's Second Claim in the Amended Complaint is against Nebo for Title VII sexual discrimination. It is undisputed that to prevail on her claim for gender discrimination, Russell must prove an adverse action. For her adverse action Russell alleges that she was constructively discharged from her employment. Nebo's position is that Russell cannot show she was constructively discharged because she voluntarily resigned and because the conditions she complained about were no longer present when she resigned.

To establish constructive discharge, Russell must prove that her employer's "illegal discriminatory acts has made working conditions so difficult that a reasonable person in [her] position would feel compelled to resign. *EEOC v. PVNF, L.L.C.* 487 F.3d

8

790, 805 (10th Cir. 2007) (citation & internal quotation marks omitted). *See also Lockheed Martin Corp. v. Admin. Review Bd.*, 717 F.3d 1121, 1133 (10th Cir. 2013) (quoting *Strickland v. United Parcel Serv., Inc.*, 555 F. 3d 1224, 1228 (10th Cir. 2009)) ("'Constructive discharge occurs when an employer unlawfully creates working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign'"). This is an objective standard and "'the employer's subjective intent and the employee's subjective views on the situation are irrelevant.'" Id. (quoting *Strickland*, 555 F.3d at 1228). And whether there has been a constructive discharge is a question of fact. *Id.; see also Acrey v. American Sheep Industry Ass'n*, 981 F. 2d 1569, 1573-74 (10th Cir. 1992) (finding sufficient facts to support constructive discharge where plaintiff reasonably believed she was at risk of losing her job, including where the supervisor asked her to quit on two occasions).

Russell has placed in dispute factual issues, regarding whether she suffered an adverse employment action based on constructive discharge, sufficient to defeat summary judgment. For example, she made factual allegations such as the following: Killian was openly hostile towards her; Killian would not speak to her; Killian closely scrutinized Russell's work, but not that of others; Killian glared at her; Killian accused Russell of lying about her complaint and Killian's knowledge of Moon's conduct; Killian claimed Russell's husband wrote her statement; Killian accused Russell of making things up as the investigation went on and changing her story; text messages between Pruitt and Killian reflected open hostility towards Russell; Killian confronted Russell in the school hallway waiving a sticky note in Russell's face telling her she wanted Russell out of her school, that there were two jobs available in the District and she wanted

9

Russell gone when she returned from her meeting; Killian told Russell she could be fired because she filed a complaint; and, Killian instructed Russell not to talk about her complaint. *See* ECF No. 149, ¶ ¶ 112 & 115 at pp.43-48 & pp. 70-72 (setting forth factual allegations of harassment, complaints of discrimination, as well as Nebo's alleged response and treatment of Plaintiff following her complaints of harassment). Because of these disputed factual issues, Nebo's Motion for Summary Judgment as to Russell's second claim is denied.

### D. Retaliation Claims - Adverse Action (Third, Fourth & Fifth Claims)

In her Third Claim against Nebo for Title VII Retaliation, Russell alleges that she "engaged in protected activity by opposing the treatment she received from Moon and Killian and others ... [and] Nebo School District's response to [her] protected activity ... and its constructive termination of Russell, in response to her opposing and reporting discrimination, harassment and retaliation, constitutes retaliation prohibited by Title VII." ECF No. 5, ¶¶ 63-64. Nebo contends Russell cannot prove she was retaliated against for purposes of her Title VII claim due to lack of an adverse action. Nebo directs the same argument at Russell's Fourth Claim for Section 1983 Equal Protection/ First Amendment violation of rights, and her Fifth Claim for Title IX discrimination.[8]

The elements of a prima facie case of Title VII retaliation are: "(1) that [the employee engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a

---

[8]Defendants acknowledge that whether an employment action is adverse is analyzed the same for Russell's section 1983 and Title IX claims as it would be under Title VII. ECF No. 104, pp. 46-47.

causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). Materially adverse, "in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id*. at n. 2 (citation omitted). The allegations must arise above trivial harms. *Burling Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "Context matters. 'The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.'" *Id*. at 69 (citation omitted).

As discussed above, disputed issues of material fact as to whether Nebo engaged in retaliatory conduct resulting in Russell's constructive discharge precludes the Court from granting summary judgment on this issue.[9] *See* Section III. C; *see also* ECF No. 149, ¶ 112 at pp. 43-47 (setting forth disputed factual allegations).

**E. Section 1983 Equal Protection/Free Speech Violations (Fourth Claim)**

Russell's Fourth Claim is against both Nebo and Killian for Equal Protection and First Amendment violations under 42 U.S.C. § 1983.

**1. Qualified Immunity**

Defendants urge that Killian is entitled to qualified immunity with respect to Russell's Fourth Claim, which they characterize as "appear[ing] to assert Killian violated the Equal Protection clause by failing to stop Moon's harassment." ECF No.104, p. 43.

---

[9]"Russell concedes that a retaliation claim under the Equal Protection Clause has not been clearly established in the Tenth Circuit, of by the Supreme Court." ECF No. 149, p.69 n.10

Defendants note that "[t]he standard for supervisory liability is such cases requires evidence of 'personal direction or actual knowledge and acquiescence.'" *Id*. (citation omitted).

"The qualified immunity doctrine shields government officials from individual liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kramer v. Wasatch Co. Sheriff's Office,* 743 F. 3d 726, 758 (10th Cir. 2014) (internal quotation marks and citation omitted). Once raised as a defense, the plaintiff must show that : (1) the official violated a statutory or constitutional right; and (2) the law was clearly established at the time of the challenged conduct. *Woodward v. City of Worland*, 977 F. 2d 1392, 1396 (10th Cir. 1992), *cert denied*, 509 U.S. 923 (1993). The Court first decides whether a constitutional violation has been alleged, and then considers whether the law was clearly established such that a reasonable defendant would know his conduct violated the plaintiff's right. *Maestas v. Lujan*, 351 F.3d 1001, 1007 (10th Cir. 2003).

For purposes of the present motion, the Court concludes that Ms. Russell alleges a constitutional violation. She asserts in her Amended Complaint that Nebo and Killian "discriminated and retaliated against [her] following her complaints about Moon's discrimination and harassment and her complaints about retaliation, in violation of the Equal Protection Clause and the First Amendment, and other federal statutes ...." ECF No. 5, ¶ 72. As Defendants note, the standard for supervisor liability can be met by creating an inference that Killian knew about specific acts of harassment and tolerated those acts. *Murrell v. School Dist. No.1, Denver Colorado*, 186 F. 3d 1238,

1250 (10th Cir. 1999) ("supervisory employee may be held liable under section 1983 upon a showing of deliberate indifference to known sexual harassment"). Russell cites factual allegations from which a jury could conclude that Killian knew about Moon's harassment of Pruitt, Russell, Killian and others, and did nothing to stop such conduct. *See* ECF No. 149, ¶ 67 at pp. 30-31; *see also id.* at pp. 62-63. If true, Killian's conduct could constitute a constitutional violation.

With regard to whether the law was clearly established, "[t]he right to be free from sexual harassment is clearly established under the Equal Protection Clause of the Fourteenth Amendment. *Kramer*, 743 F.3d at 758. Russell acknowledges that an Equal Protection "retaliation" claim has not been clearly established in either the Tenth Circuit or by the United States Supreme Court. See ECF No. 149, p. 69 n. 10. The right to be free from retaliation for the exercise of First Amendment rights to speak on matters of public concern is also clearly established. *Couch v. Board. of Trustees of Memorial. Hosp. Of Carbon Co.*, 587 F. 3d 1223, 1235 (10th Cir. 2009); *Wren v. Spurlock*, 798 F. 2d 1313, 1317 (10th Cir. 1986).[10]

Accordingly, for purposes of the present Motion, the Court cannot conclude that Killian is entitled to qualified immunity.

### 2. Equal Protection Claim

Defendants' next assert that Russell fails to state an Equal Protection Claim because she fails to allege she was treated differently from any other similarly situated person. Plaintiff, however, references authority that she is not required to point to

---

[10] It is worth noting that It is undisputed that sexual harassment and retaliation are violations of Nebo's policy.

comparators to prove her claim of sexual harassment under the Equal Protection Clause. *See Kramer*, 743 F. 3d at 759 (elements of claim include (1) impermissible custom or policy; (2) causation: and (3) deliberate indifference). The Court concludes that Defendants' brief argument on this point does not satisfy their burden of persuasion.

Likewise, the Court is not persuaded by Defendants' argument that Russell's Equal Protection Claim fails because it is a class of one. Gender based equal protection claims do not require assertion of any action taken against a class. *See Hunt v. Central Consol. School Dist.*, 951 F. Supp. 2d 1136,1190 (D.N.M. 2013) (it is "not necessary, for a plaintiff in a protected class pleading a class-based equal protection claim , to allege that similarly situated individuals were treated differently"). Here Russell alleges a class based equal protection based claim and that she is a member of a protected class. ECF No. 5, ¶¶ 69 & 71.[11] Defendants' brief argument on this point does not satisfy their burden of persuasion.

Defendants also urge that Russell's claim fails because she cannot establish an official policy or custom.[12] Defendants point to Nebo's policy prohibiting discrimination, harassment, and retaliation. However, "[u]nwritten customs not 'formally approved by

---

[11] Plaintiff alleges in her Amended Complaint that she "engaged in constitutionally protected expression by opposing Moon's gender discrimination and harassment, and taking actions to protect other women and students from Moon's conduct as alleged above, and opposing Defendant Nebo School District's and Killian's retaliation against her" and that she "is female and thus a member of a protected class under the Equal Protection Clause ...." ECF No. 5, ¶¶ 69 & 71.

[12] *See e.g. Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1249 (10th Cir. 1999) (to establish liability on a § 1983 claim "a plaintiff must demonstrate that a state employee's discriminatory actions are representative of an official policy or custom" of the school).

an appropriate decision maker' can suffice to create municipal liability 'if the practice is so widespread as to have the force of law.'" *Kramer* 743 F.3d at 759 (citation omitted); *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (an official policy or custom may take many forms, including "deliberately indifferent training or supervision"). Russell alleges that "[o]ver a two-year period, more than twenty employees of the District were subjected to repeated acts of harassment and discrimination by Moon, yet Moon's reign of terror remained unchecked (See response to SOF Nos. 36-79.)". ECF No. 149 at p. 73; *see also id.* at pp. 18-35. The Court concludes that Defendants have not met their burden of persuasion and/or there are disputed issues of material fact regarding this issue which preclude summary judgment.

### 3. Free Speech

Finally, Defendants, contend that Russell cannot demonstrate a First Amendment violation because her speech was not a matter of public concern and, therefore, not protected. *See Couch*, 587 F.3d at 1235 (discussing five-prong Garcetti/Pickering test used when analyzing a free speech claim based on retaliation by

an employer).[13]  Referencing only the second prong of the Garcetti/Pickering test, Defendants, with little analysis of that test, simply contend that Russell's complaints are personal grievances, not matters of public concern and, therefore, not protected speech.

Defendants have not met their burden as the moving party on this issue.[14]  And, therefore, Defendants' motion for summary judgment as to Russell's claim for section 1983 First Amendment violation is denied.

## IV CONCLUSION

For the reasons stated, as well as generally for those reasons set forth by

---

[13] The five prongs of the test are

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.  The first three "prongs" are said to be issues of law to be decided by the court; the last two are factual issues to be decided by the factfinder.

*Dixon v. Kirkpatrick*, 553 F. 3d 1294. 1302 (10th Cir. 2009).

[14] Russell asserts that "[c]omplaints about the efforts of the District to cover-up Moon's sexual harassment, the sexual harassment of staff and the District's continued employment of an employee with a history and track record of harassment is something the community would understandably be concerned about." ECF No. 149 at 74-75.  *See, e.g., Wren v. Spurlock*, 798 F.2d at 1317 (affirming trial court's ruling that speech was a matter of public concern where it involved discussion of high faculty turnover and sexual harassment of students and teachers).

Plaintiff in her opposition pleading, the Motion for Summary Judgment of Defendants' Nebo School District and Angie Killian (ECF No. 104) is denied.

IT IS SO ORDERED.

Dated this 17th day of October, 2018

BY THE COURT:

_____
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT